No. 32,947

JOHN F. PIERCE et al., *Appellants*, v. EDGAR T. PIERCE et al., *Appellees*.

(64 P. 2d 576)

Opinion filed January 23, 1937.

F. C. Norton, of Salina, Theodore M. Metz, of Lincoln, Neb., A. G. Gertz, of Denver, Colo., and Frank Glebe, of Scotts Bluff, Neb., for the appellants.

Z. C. Millikin, W. C. Millikin, both of Salina, and John J. McCurdy, of Lincoln, Neb., for the appellees.

The opinion of the court was delivered by

THIELE, J.:  Plaintiffs brought an action to contest their mother's last will and testament on the grounds that at the time of making it she was of unsound mind and was unduly influenced by the defendant, Edgar T. Pierce.  At the trial a jury was called in an advisory capacity.  It returned answers to special questions submitted which need not be set out at length, but in substance were that the testatrix at the time of executing the will was of unsound mind, weak in body, didn't understand the value and extent of her property nor the ties of relationship and the claims of her children upon her; that she didn't know the provisions of the will nor understand the disposition she made of her property; that undue influence was exercised by Edgar T. Pierce; that on November 2, 1934, the day before the will was executed, she did not inform Judge Artman of the nature of the will she desired to make nor to whom her estate should go; that Judge Artman read the will to her before she executed it, but she did not know the nature and effect of the instrument.

The defendants' motion to set aside the findings and verdict of the jury was sustained and the court made its own findings of fact and concluded that the testatrix at the time of executing the will was of sound mind and not under restraint, and that the will was in all respects valid, and accordingly denied plaintiffs any relief and rendered judgment in favor of defendants.  The plaintiffs appeal.

It is first contended the trial court erred in setting aside the jury's findings.  In examining this contention it must be borne in mind that the jury's findings were only advisory, and if the trial court was of the opinion they should not be adopted it was its duty to set them aside.  The appellants' argument is perhaps based more on the proposition that under the evidence no conclusions of fact could be made other than as found by the jury, and it was therefore error to set the jury's findings aside.

The testatrix died November 4, 1934. Her husband, who died in August, 1933, had been an invalid for some years before his death, and she had looked after and managed his business affairs. Under his will she received the bulk of his estate. In May, 1934, she was in a hospital for fourteen days, at which time she was operated on for removal of a cyst. She made a recovery from the operation. At that time there was no evidence she suffered from pernicious anemia, although she had that disease later. From September 25 to October 6 she was in a hospital at Ellsworth, where her trouble was diagnosed as pernicious anemia. Her personal physician stated that she improved while in the Ellsworth hospital, and that he saw her four times in October after she returned from the hospital; that he was present when she signed the will and that she was of sound mind; that he was called to see her that night and she was then rational. He saw her the next day and she did not then know him. She died shortly after noon. The physician who operated on her in May stated he had known her for some years; that she was a woman of strong mind and strong intellect; that he had treated cases of anemia and in such cases the intellect had not been affected. In his opinion she was of sound mind. Another physician, who treated her at the Ellsworth hospital, stated he saw nothing out of the way about her mental condition.

Mrs. Pierce was the executrix of her husband's estate then pending in the probate court of Lincoln county and of which Artman was the judge. Mrs. Pierce sent for him. He went to her house on November 2, 1934, and she asked him to prepare her will, telling him of her property and what she wanted done with it. He drew a will and took it to her on the morning of November 3, at which time he read the draft to her. She suggested some changes and he returned to his office and made them and returned to her house about one o'clock and read the redrafted will to her. During these conversations no other person was present. After the will had been redrafted she said it was all right, and stated whom she wanted for witnesses, and they were called and the will was duly executed. We shall not detail much other evidence bearing on the question of her mental condition or tending to prove undue influence by Edgar Pierce, her son, nor shall we detail further any medical testimony that pernicious anemia affects the mental condition of the afflicted person.

Appellant quotes from medical authorities that a person suffering

from pernicious anemia is mentally affected, and from that argues that it being conceded that the testatrix had such disease, that necessarily she was mentally affected and any other conclusion cannot be reached. The difficulty with the argument is that it ignores not only that part of the medical testimony favorable to the defendants, but it ignores testimony of laymen that the testatrix did not in fact suffer any mental ailment.

While there was evidence which would have upheld the jury's answers to the special questions, there was likewise evidence which supports the findings of the trial court that the testatrix was of sound mind at the time she made the will in question. In that situation the judgment of the trial court must stand.

It is also contended that the will was the result of undue influence exercised by the defendant, Edgar Pierce. Here again we are confronted with the fact that there was conflicting evidence. The fact that Edgar Pierce may have had an opportunity to influence his mother is not decisive. Mrs. Pierce lived in her own home, and a daughter of Edgar T. Pierce took care of her grandmother during the latter days of her life. While Edgar Pierce lived closer to his mother than the other children, there is no evidence which compels any conclusion that he did anything whatever to procure the will being made in any particular manner. He did tell Judge Artman his mother wanted to see him. Judge Artman's statement of what the testatrix wanted done, her suggestions, and the subsequent amendments to the will as originally drafted, etc., afforded the trial court ample ground to hold there was no undue influence.

We also take note of the argument the trial court erred in not considering the answers to hypothetical questions propounded to certain medical witnesses and bearing on the question of mental competency. No particular purpose would be served in detailing the question, but included in its elements were data from some hospital charts. When the charts were offered the defendants objected, the abstracts not showing on what particular grounds. The question included many statements as to the patient's condition, her breathing, temperature, bodily disturbances, etc. So far as the record shows, there was no testimony that any of these conditions existed, except as they may have been noted on the charts. Under such circumstances it was not error for the trial court to ignore the answers to the questions. (*Davis v. Insurance Co.*, 59 Kan. 74, 52 Pac. 67; *Roark v. Greeno*, 61 Kan. 299, 59 Pac. 655; *Commercial*

*Travelers v. Barnes*, 75 Kan. 720, 90 Pac. 293; *Nangle v. Packing Co.*, 112 Kan. 289, 212 Pac. 108.)

It has not been made to appear the trial court erred, and its judgment is affirmed.